SCHOTT, Judge.
Defendant Robert E. Richmond has appealed from a judgment in favor of plaintiff Latter & Blum, Inc. for $878.52 and dismissing his reconventional demand for damages. The issues are whether plaintiff, a real estate agent, is entitled to a commission on a lease between defendant and a tenant after plaintiff had breached its fiduciary duty to defendant by wrongfully giving the tenant possession of the premises and whether defendant is entitled to damages for trespass against the agent who placed the tenant in the premises without obtaining defendant’s permission.
Richmond owned a warehouse building which was leased to New Orleans Electrical Supply, Inc. This lease was scheduled to expire on August 31, 1976, and it contained the standard clause prohibiting a sub-lease of the premises without the owner’s written consent. On February 17, 1976, New Orleans Electrical employed plaintiff to sublease the property for the remainder of its lease, whereupon plaintiff contacted Richmond so that it could lease the premises beyond August 31 and earn additional commission. On February 24 and 25 an agreement to that effect was signed by plaintiff and Richmond with the stipulation that Richmond had to give prior approval as to any tenant.
On July 22, 1976, a disastrous fire occurred at the offices of J. A. Majors Medical Book Company in New Orleans and they employed plaintiff to find a new location immediately. On Saturday, July 24, plaintiff moved Majors into Richmond’s building without contacting him and securing his approval. On Monday plaintiff’s agent advised Richmond that Majors had moved into his property, whereupon Richmond protested and demanded that Majors move out unless a lease was obtained from Majors. These demands were repeated throughout the ensuing week without any results. By the end of the week Richmond’s property was still being occupied without his permission and with no lease, his repeated demands that plaintiff either get rid of the occupier or secure a lease had gone unheeded, he had gotten reports that plaintiff was searching for another location for Majors so that his property might be just a stopping off point for Majors; the process of evicting Majors was complicated because Majors was technically a sub-tenant of New Orleans Electrical Supply, Inc.; and Richmond had learned that the burned premises originally occupied by Majors were owned by the Schlesinger family who were major stockholders in the plaintiff corporation. *548 Considering all of these circumstances Richmond decided to employ another real estate agent to negotiate a lease with Majors.
Within 48 hours the new agent negotiated a lease with Majors which was satisfactory to Richmond, and on this lease is based plaintiff’s claim and judgment for commission. It is plaintiff’s position that Richmond allowed the new agent to insert in the lease an escape clause in favor of Majors for 120 days, whereas this advantage to Majors was not available to plaintiff in its negotiations with Majors.[1] Plaintiff argues that it could have produced the same lease for Richmond but was prevented from doing so.
The trial judge was apparently persuaded by this argument since he found that plaintiff 1) had a contract with Richmond and 2) procured Majors as a tenant. However, we have concluded that this is an oversimplification of the case and ignores the real issue of plaintiff’s violation of its fiduciary duty to Richmond.
When plaintiff first considered placing Majors in Richmond’s building it was acting in the capacity of a broker under LSA-C.C. Art. 3016. Its obligation under such circumstances were prescribed by Art. 3017 as follows:
“The obligations of a broker are similar to those of an ordinary mandatary, with this difference, that his engagement is double, and requires that he should observe the same fidelity towards all parties, and not favor one'more than another.”
The original contract in February between plaintiff and Richmond was negotiated by plaintiff’s agent, Jack Fisher, but another of plaintiff’s agents, Henry Ogden, put Majors into Richmond’s building. Ogden gave the following testimony on cross examination:
“Q Is it safe to say that your actions were motivated by serving the interest of your client Majors, who faced a major loss?
A Well, you know, you enter into an area where you can represent more than one party. In real estate, the commission in 99.9 times out of 100 is paid by the owner or lessor of the property. Technically, we represent the owner more than we represent the prospective client looking for a property. It is not money in the bank to us until the owner of the property pays us the commission so we essentially work for the owner of the property.
Q I understand from your testimony in your deposition that up until that date, you considered that you represented Majors Medical Book Store primarily, and that was your client?
A Well, let me explain this because if your question is me personally or Latter and Blum. Latter and Blum, you could say they wore two hats in that situation. One of our agents, Mr. Jack Fisher represented Mr. Richmond and I was another one of Latter and Blum’s agents, representing the Majors company.
Q So what you are saying, in this situation, Latter and Blum wore two hats, is that correct?
A Correct.”
The clear inference from this testimony is that when plaintiff, through Ogden, placed Majors in Richmond’s building it departed from its position as a broker which it had acquired through Fisher. The contract of February 24 and 25 was repudiated and plaintiff could not thereafter collect a commission under that contract.
However, plaintiff through Ogden was given a second chance to earn a commission when despite its conduct in placing Majors in Richmond’s building without his authority, Richmond agreed to let plaintiff, now through Ogden, negotiate a lease with *549 Majors. The facts are uncontradicted. Ogden never performed. His excuse was his mistaken notion that Richmond would not agree to the 120 day escape clause in favor of Majors, but he never even tried this out on Richmond. Therefore, plaintiff procured no lease and earned no commission.
As to the Richmond’s reconventional demand for damages, it was properly dismissed. The trial judge reasoned that Richmond had not satisfied the burden of proof and the alleged damages were speculative. In this court Richmond correctly argues that actual damages need not be proved in order to support an award for damages from a trespass but we have concluded that the circumstances do not support a trespass action in the first instance.
The supposed trespass occurred on July 24 and ended on, at the latest, August 11 when Richmond and Majors made their lease. At this time the premises were under lease to New Orleans Electrical so that it and not Richmond was- entitled to occupancy. When Majors moved into Richmond’s property it signed a sub-lease with New Orleans Electrical Supply and gave Ogden a check for the rent which he “presumed” was forwarded to New Orleans Electric.
Thus, Majors was a sub-lessee and Richmond’s only complaint could be that New Orleans Electrical Supply was in violation of the lease which required prior consent of Richmond to a sublease. Since Richmond was not deprived of occupancy of his premises and since no damage was done to his property the notion of trespass seems inapplicable. Assuming that Richmond had a tort claim under C.C. Art. 2315 we agree with the trial judge that he proved no damages.
Accordingly, the judgment on the main demand is reversed and set aside and there is judgment in favor of defendant, Robert R. Richmond, and against plaintiff dismissing its suit at its cost. The judgment on the reconventional demand is affirmed. All costs of this appeal are assessed against plaintiff.
Affirmed in Part, Reversed in Part and Rendered.

. There was in the lease between Majors and the Schlesingers the usual clause which bound Majors after the fire for a period of 120 days during which the premises might be repaired and restored for occupancy. Therefore, Majors was unwilling to lease Richmond’s property unconditionally because of the risk of being bound under two leases.